Alright, our last case for the morning, Norma Santos v. Pamela Bondi, and do we have, Mr. Budzinski, when you're ready. Good morning, Your Honors. Budzinski for Petitioners. This is a difficult case for the petitioners, and it presents three issues. One, well-founded fear of future persecution, nexus to a protected ground, and internal relocation. I will proceed in that order unless there are questions. Regarding the Convention Against Torture, are we not taking that up for purposes of  Correct, we're waiving that for appeal. Alright, so we'll focus on asylum and the withholding of removal? Correct, Your Honor. Beginning with well-founded fear, this is not a demanding standard. In Cardozo Fonseca, the Supreme Court explained that maybe a 1 in 10 chance of persecution is going to be enough. The immigration judge relied on three points to conclude that Santos' fear was not well-founded or objectively reasonable. First, he reasoned that Santos' fear was not reasonable because she did not continue to receive threats after the initial incidents. This is not surprising. Santos left Honduras within one or two weeks of the in-person encounter and the follow-up phone call, specifically so that she would avoid further threats. And was she able to tie up that the, I guess the gangs were targeting her because of her representation or being a member of this group? Yeah, so that's the nexus requirement. And she presented three particular social groups that are relevant now. We've waived a couple of them. And the nexus requirement requires us to look at the motive of the persecutor. And it does not need to be the sole motive of the persecutor. And it does not need to be the primary one. And it can be established by circumstantial evidence. The petitioners here have three remaining particular social groups, Hondurans who have opposed or resisted criminal gangs, single Honduran women living alone or without male partners, and women in Honduras. On the first one, the judge concluded that it was not cognizable, reasoning that it was unclear who its members are or how they oppose or resist gangs. So that's not really nexus so much as he didn't believe the particular social group was legally valid. He further reasoned that the group was impermissibly defined by a desire to avoid crime or by the harm it seeks to avoid. On the first point, I think the group here is sufficiently clear. Its members are Hondurans who have opposed or resisted criminal gangs. It does not limit the manner or opposition to the particular gang. And it does not need to be cognizable. This court in WGA and CC rejected invalidating particular social groups because they are too broad. Second, the group is not defined by a desire to avoid crime or by the harm it seeks to avoid. It's defined by a shared past experience. And beginning in Sepulveda, this court recognized that past experiences can define a particular social group because you can't change past experiences. On the nexus issue, we're looking more at the second and third groups. Single Honduran women living alone without male partners and women in Honduras. The immigration judge accepted that Santos was a member of these groups. However, he concluded that there was no nexus, that the nexus was received wealth, not the particular social groups. He also reasoned that this danger she faced was shared by others and that the general conditions of crime do not amount to persecution. This analysis isolates extortion and treats money as the sole motive. But extortion always involves money. So really what we need to look at is whether there was another central reason for the targeting. And what we have in the record here is that in the future, should Santos have to return to Honduras, she would be a woman. She would be single or living without a male partner. And the country conditions evidence here indicates that women and women lacking male-dominated family networks are particularly vulnerable in Honduras. That's the factual basis for the nexus here. And these characteristics are not incidental. The increase in vulnerability, and they explain why she was targeted and would be targeted again. Wealth may have been one motive, but under Martinez-Buendina and Puey Salavio, to protect the ground only needs to be a central reason, and it does not need to be the primary one. If we accepted her representation, just to move the conversation forward, that these things would happen to her before she left, what representation was made that there's an objectionable reasonable fear if removed and returned to Honduras, that she would be unable to relocate or that the persecution would continue? So, on internal relocation... Say it one more time, I'm sorry. On internal relocation, that's what we're talking about, correct? So the immigration judge there concluded that Santos did not meet her burden for three reasons. Because the people who previously threatened her, she did not know, and because she did not know whether they could locate her elsewhere, and because she has family members who continue to reside in Honduras, and because crime, violence, and police corruption occur throughout Honduras, and these conditions are experienced by all members of Honduran society. First, Santos does know who threatened her. She doesn't know his name, but she knows his nickname, El Negro, and he attended school with her son, and in the village where she This was not an anonymous threat. The record also includes country conditions evidence explaining that gangs in Honduras have well-established communication networks throughout the country, and that when a person enters a new area, gang members routinely contact associates in an individual's home community to determine whether the gang has business with that person. For someone trying to avoid threats by relocating, this is going to undermine that relocation. The same evidence I'm referring to here also explains that internal relocation is generally not viable for women targeted for gang violence. They are particularly vulnerable. Additionally, the fact that Santos has family members in Honduras does not establish that internal relocation would be reasonable here, because they were not targeted. Santos was, and that prior targeting is going to be what is inquired about when she moves to a new location. They are going to contact people within her home community to determine whether the gang has business with them. They do here, because she was previously targeted, and instead of paying, she fled. Additionally, her family members are currently in La Sabana, not some other region that would evidence safe relocation. And while crime and corruption are experienced throughout Honduras, it's not clear why the immigration judge treated that as irrelevant to the reasonableness of relocation. Internal relocation asks whether it's reasonable, under all the circumstances, to relocate. Widespread crime, violence, and police corruption bear directly on that reasonableness, and treating it as immaterial is legal error. In any event, the country conditions evidence here goes further than generalized conditions. It describes coordinated gang networks tracking across communities and the particular vulnerability of women targeted for gang violence. This evidence speaks directly to the feasibility of relocation. If there are no questions, I'll reserve the remainder of my time. Thank you, counsel. Mr. Hayes? Good morning, your honors. May it please the court, Timothy Hayes on behalf of the Attorney General. The record in this case does not compel the conclusion that petitioner holds a well-founded fear of future persecution. Her sister currently lives in the family home, and no gang member has approached, and she left the country in 2016. And that's at page 135 and 136 of the record. Unknown persons did approach her in-laws at their house asking where Ms. Santos had gone, but they did not say anything in response and did not issue any threats. As far as the internal relocation, that is a separate issue from whether there's a reasonable possibility that she would be singled out. So even if it was reasonably possible that she would be singled out, she would still hold the burden of proving that relocation would be unreasonable under all the circumstances. And she hasn't done that in this case. This court's PAV case explained that testimony about general violence and vague threats are too speculative for the applicant to carry the burden of proving unreasonable relocation. It is the applicant's burden, and she hasn't produced any evidence suggesting that it would be unreasonable to expect her to relocate. On the issue of nexus, which is the third issue, at page 309, the immigration judge did state that the sole motive was perceived wealth, and that was his finding. This is not a mixed motive case. The immigration judge did not find that any of the, well, now three proposed groups, even if they're recognizable, that they were a factor at play in the threat she received. And finally, on the threat she received, it is true that the person that she knew as El Negro did approach her outside her home and asked for her son. She said her son was not home. And he received a telephone call and said, yeah, I'm with her, and then left. It was later, over the telephone, that a threat was issued. And she stated in her testimony that she did not know who called her. So we're not even sure if this person actually called her and issued the threat. And the threat there was pay money or we will hurt you and your family. And I'll ask the court if it has any questions. Thank you, counsel. You're welcome. Mr. Brzezinski, or Bo? There are no further questions, Your Honor. I would ask that you reverse and remand. Thank you. The court will take the case under advisement. Those are all the cases we have for this morning and will be adjourned. Thank you. Thank you.